WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Andrew Collier, et al., | No. CV-12-02161-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Gurstel Chargo, PA, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Sanctions (Doc 74). Plaintiff's Attorney Bybee ("Bybee") opposes the motion. (Doc. 83). Defendant has replied (Doc. 85) and the Court heard oral argument on April 23, 2014.

**I.    BACKGROUND**

Plaintiffs Michael Collier ("Mr. Collier") and Kim Collier-Dingman ("Ms. Collier-Dingman") sued Gurstel Chargo for violations of the Fair Debt Collection Practices Act ("FDCPA"). Mr. Collier first contacted Bybee in June of 2012 regarding collection actions taken by Defendant, particularly an alleged inflammatory phone call.[1]

Mr. Collier, a disabled veteran, received a favorable judgment by the Maricopa County Superior Court quashing a $6,143.88 garnishment against him obtained by

---

[1] Plaintiff alleged that during a phone conversation concerning the release of garnished funds, an unidentified Gurstel Chargo legal assistant told Plaintiff "F--- you! Pay us your money! You can't afford an attorney. You owe us. I hope your wife divorces you're [sic] a--. If you would have served our country better you would not be a disabled veteran living off of social security while the rest of us honest Americans work our a---- off. Too bad; you should have died." (First Amended Complaint, Doc. 7 ¶ 31).

Defendant. (Doc. 83-2 at 8–9). At the time of the hearing, Mr. Collier and Ms. Collier-Dingman claimed to be married and, therefore, the garnishment was not valid because that money was to be used in furtherance of Ms. Collier-Dingman's education. (Doc. 83-1 at 3). The funds were later ruled exempt from garnishment because Ms. Collier-Dingman maintained that she was the spouse of a disabled, living veteran using the funds to further education pursuant to 38 U.S.C. § 3501 (a)(1)(D)(i). (Doc 83-1 at 1–2).

After the judgment, Mr. Collier claims to have requested Gurstel Chargo release the funds and Gurstel Chargo allegedly responded that Mr. Collier would have to file a lawsuit to receive the funds. (Doc. 83-1 at 2). Mr. Collier also alleges he received a phone call from a Gurstel Chargo employee who used a series of inflammatory and particularly incendiary statements towards him. (Doc. 83-2 at 2; *supra* n.1). Mr. Collier called Bybee that day to notify him of what happened. (Doc. 83-1 at 1–2). A subsequent email from Mr. Collier to Bybee described, amongst other things, that Mr. Collier's disability inhibited his "written and verbal communication, comprehension, and memory." (Doc. 83-2 at 2). Bybee then scheduled a meeting for September 20, 2012. (Doc. 83-1 at 2). At the meeting, Mr. Collier referred to Ms. Collier-Dingman as his wife on multiple occasions. (*Id.* at 3). Mr. Collier claimed to have written down the phone number from which the incendiary call was made although he did not provide it during the meeting. (Doc. 83 at 12–13).

Bybee then drafted a fee agreement to be signed by Mr. Collier and his supposed wife, Ms. Collier-Dingman. (Doc. 83-2 at 5–6). Mr. Collier maintained that Ms. Collier-Dingman was very busy and could not meet Bybee in person, but that he would ensure both of them signed the agreement. (Doc. 83-1 at 3). He then returned the agreement with both signatures. (Doc. 83-2 at 5–6). Ms. Collier-Dingman later denied that she signed the fee agreement. (Doc. 83-1 at 8).

On October 10, 2012, Bybee filed the Complaint (Doc. 1). (Doc. 83-1 at 4). A few days after the Complaint was filed, Bybee received a call from Mr. Collier stating that Ms. Collier-Dingman had found an error within the Complaint regarding the allegations against Mr. O'Brien, an attorney from Gurstel Chargo. (*Id.*). On October 18, 2012,

Bybee, reviewed the Amended Complaint with Mr. Collier and Ms. Collier-Dingman and filed it that day. (*Id.*). Both complaints quoted the particularly incendiary alleged phone conversation. (Doc. 1 at 5–6; Doc. 7 at 5).

According to Defendant, in response to the incendiary phone call quoted in the Complaint and Amended Complaint, Gurstel Chargo received a "public outcry [after initial complaint] of threats, accusations, and vicious attacks towards Gurstel Chargo [that] were immediate and unrelenting." (Doc. 74 at 3). Mr. O'Brien, specifically identified in the initial complaint, was targeted individually. (*Id.*). As a result, Gurstel Chargo requested and was given police protection at its offices in Arizona and Minnesota. (*Id.* at 9). Gurstel Chargo conducted an internal investigation while also hiring a crisis management professional and public relations firm to provide assistance. (*Id.*). Gurstel Chargo requested the date on which the call was made and the corresponding phone number. (*Id.* at 10). Neither Gurstel Chargo's internal investigation nor the production of phone records during discovery revealed evidence of the phone call. (*Id.*).

In April 2013, Dr. Pitt, Defendant's medical expert, issued a psychiatric evaluation of Mr. Collier to all counsel in the case and stated that Mr. Collier and Ms. Collier-Dingman were divorced. (Doc. 74 at 17; Doc. 83-1 at 9). Later discovery revealed that the two had divorced in 2010, well before the quash order issued by the Maricopa County Superior Court. Litigation continued until July 24, 2013 when Mr. Collier and Ms. Collier-Dingman signed a stipulation to dismiss the lawsuit, "stating (1) they agree to take nothing as a result of this action, (2) that Gurstel Chargo performed no action that was in violation of the FDCPA, and (3) that the telephone call referred to in the Complaint and the central subject of this lawsuit was not made by Gurstel Chargo, any employee or affiliate of Gurstel Chargo, or anyone acting on behalf of Gurstel Chargo." (Doc.74 at 11 (internal quotations omitted)). On August 5, 2013, the Court dismissed the case with prejudice. (*Id.*). Subsequently, Defendant moved for sanctions against Bybee. (Doc. 74).

## II. ANALYSIS

The "American Rule" states that each party bears its own attorneys' fees and litigation costs. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Defendant seeks relief under the narrow exceptions of the Court's inherent power and 28 U.S.C. § 1927.

### A. Sanctions Based Upon the Inherent Power of the Court

Before awarding sanctions under its inherent powers, the court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Exp.*, *Inc. v. Piper*, 447 U.S. 752, 767 (1980)). "[T]he narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or improper purpose." *Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir. 2001). Mere recklessness, without more, does not justify sanctions under a court's inherent power. *Id.* at 999–94.

Here, Defendant contends that Bybee's conduct was reckless, frivolous, and brought for an improper purpose. (Doc 74 at 11–22). The Court is inclined, given the explosive nature of the quoted phone call and Collier's stated diminished communication skills and mental disability, to conclude that Bybee's actions constitute negligence and possibly recklessness. However, when viewed through the lens of the law, the Court need not address this element because Bybee's actions were neither frivolous nor based on an improper purpose and, therefore, the necessary elements for sanctions under the inherent power of the court cannot be met.

Defendant argues that Bybee did not perform proper investigation prior to filing suit by failing to meet Ms. Collier-Dingman, look at records fundamental to the claim, and learn the status of the garnished funds at the credit union. (Doc. 74 at 20). While Bybee may not have performed the most thorough investigation, the suit states a valid

claim and appears to have been filed in good faith. Bybee states it is not unusual to have a spouse unable to meet in person before the filing of a suit. (Doc. 83 at 4). Moreover, Bybee stressed to Mr. Collier the importance of reviewing the document in detail with his wife prior to moving forward. (*Id.*). With regard to investigating the status of the funds at the credit union, Bybee notes the Superior Court did not include any language in the quash order that directed the credit union to release the funds. (Doc. 83-1 at 8–9).

With regard to frivolousness, Defendant claims that Bybee knew or should have known that there was no legal basis for either the conversion claim or the FDCPA claim. (Doc. 74 at 18–19). However, the Superior Court's quash order did not direct Desert Schools Credit Union to release the funds. (Doc. 83-2 at 8–9). There was also no indication that Gurstel Chargo had notified the credit union of the quash order. (*Id.*) Consequently, the claim against Gurstel Chargo was not frivolous.

Additionally, Bybee's filing of the suit does not constitute an improper purpose. While the claim was extinguished as a result of the divorce, the suit itself was brought for a proper purpose. The quash order from the Maricopa County Superior Court was a sufficient foundation from which to believe the two were married. Furthermore, Mr. Collier and Ms. Collier-Dingman maintained they were married up until Dr. Pitt examined Mr. Collier. (Doc. 83 at 8–9).

The Court is aware of the unexpected consequences arising from this claim, but Bybee's limited investigation prior to filing the Complaint does not entitle Defendant to sanctions under the Court's inherent power.

**B.      Sanctions Based Upon 28 U.S.C. § 1927**

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 sanctions "must be supported by a finding of subjective bad faith."

1 *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). In the Ninth Circuit, "section [1927] authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

8 Defendant argues that sanctions are warranted because Bybee filed an initial and Amended Complaint without performing an appropriate inquiry that included accounting for the potentially explosive nature of the claim. (Doc. 74 at 22–23). Defendant further states that Bybee multiplied the proceedings both by filing the Amended Complaint and by prolonging litigation after realizing that Mr. Collier and Ms. Collier-Dingman were not married. (*Id.* at 23).

14 From the record presented, the Court cannot conclude that Bybee multiplied the proceedings, and, as a result, will not make findings regarding recklessness or bad faith. The amended complaint was filed less than two weeks after the initial complaint and does not constitute a multiplication of the proceedings for purposes of 28 U.S.C. § 1927. Bybee states that he filed the Amended Complaint in a timely manner after learning that Mr. Collier had found a flaw in the original Complaint. (Doc, 83-1 at 4). Mr. Collier then explained to Bybee that he comprehended written material much better when it was read to him and it was only after Ms. Collier-Dingman read it aloud that he realized the error. (*Id.*). Because the Amended Complaint was filed so soon after the original Complaint and served only to remove an inaccurate allegation, the Court does not find that filing the Amended Complaint constitutes a multiplication of the proceedings.

25 With regard to the furtherance of litigation after the Amended Complaint, Defendant claims that Bybee maintained the action after becoming aware that Mr. Collier and Ms. Collier-Dingman were divorced. (Doc. 74 at 23; Doc. 85 at 9). It is undisputed that both parties learned of the divorce by April of 2013. (Doc. 74 at 17; Doc. 83-1 at 8–

9). Given this fact, the Court wonders why counsel did not arrange an immediate meet and confer to discuss repercussions of the divorce revelation and the necessity of further litigation. Regardless, Bybee asserts, and Defendant does not dispute, that Bybee was in communication with Defendant's counsel about dismissal of the action prior to its July 2013 stipulated dismissal with prejudice. (Doc. 83-1 at 9–10; *see* Stipulation of Dismissal, Doc. 72). Defendant nonetheless performed additional discovery, including retaining experts, from April to July of 2013. (Doc. 85 at 10). The Court finds this extended litigation more akin to a mutual communication breakdown between the parties than a multiplication of the proceedings caused by Bybee. During the four months of April through July, counsel for both parties were aware of the divorce, and, as such, the Court is not persuaded that Bybee's conduct merits 28 U.S.C § 1927 sanctions.

## III.   CONCLUSION

Given the explosive nature of the claim and mental health of Mr. Collier, amongst other issues already addressed, it is understandable that Defendant seeks sanctions against Bybee. The facts of this case cry out for a rule which would impose a sliding scale of pre-filing diligence on the part of a lawyer. Factors such as the mental condition of the client, the potential explosiveness of the claim, the potential for adverse consequences to the adversary, perhaps among others, would call for greater due diligence. Neither Rule 11, the inherent power of the Court as it presently exists, nor 28 U.S.C. § 1927 provide the relief that may be called for here. At most it can be said that this defendant suffered a wrong for which there is currently no remedy. Although, the Court has sympathy for the lopsided impact this litigation has had on Defendant, ultimately, Defendant falls short of demonstrating entitlement to sanctions.

/ /
/ /
/ /
/ /
/ /

Accordingly,

**IT IS ORDERED** that Defendant Gurstel Chargo, PA's Motion for Sanctions (Doc. 74) is DENIED.

Dated this 19th day of May, 2014.

James A. Teilborg
Senior United States District Judge